**MARTIN MARIETTA CORPORATION, AERO & NAVAL SYSTEMS, Plaintiff–Appellant,**

v.

**MARYLAND COMMISSION ON HUMAN RELATIONS, Defendant–Appellee.**

No. 93–1913.

United States Court of Appeals, Fourth Circuit.

Argued April 11, 1994.

Decided Oct. 27, 1994.

**ARGUED:** William Leroy Reynolds, II, Piper & Marbury, Baltimore, MD, for appellant. Lee David Hoshall, Asst. Gen. Counsel, Maryland Com'n on Human Relations, Baltimore, MD, for appellee. **ON BRIEF:** Russell H. Gardner, Scott V. Kamins, Piper & Marbury, Baltimore, MD, for appellant.

Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and RESTANI, Judge, United States Court of International Trade, sitting by designation.

Affirmed by published opinion. Judge RESTANI wrote the opinion, in which Chief Judge ERVIN and Judge NIEMEYER joined.

## OPINION

RESTANI, Judge:

Martin Marietta Corporation, Aero & Naval Systems ("Martin Marietta") appeals from the decision of the United States District Court for the District of Maryland granting the motion to dismiss of defendant Maryland Commission on Human Relations (the "MCHR") and denying Martin Marietta's motion for preliminary injunction to en-

join state administrative proceedings. The district court dismissed the action on the grounds that the requirements for abstention as discussed in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), had been met. For the reasons described herein, we affirm.

## I.

### BACKGROUND

Martin Marietta provides goods and services, under contract, to various agencies of the United States government. Martin Marietta is a party to several collective bargaining agreements ("CBAs") that define terms and conditions of employment, including the handling of employee grievances.[1] The state administrative proceedings Martin Marietta sought to enjoin concerned discrimination claims brought by Franklin R. Price ("Price"), a former employee. Price began employment with Martin Marietta in 1979 at its Baltimore facility.[2] At the time Price was hired, he suffered from a severe hearing impairment.

On September 29, 1983, Price was struck by a vehicle in Martin Marietta's parking lot, and suffered serious injuries to his head, abdomen, limbs and torso. In particular, Price sustained a "traumatic brainstem contusion," resulting in multiple neurological problems including disturbed memory, loss of balance, dizziness, forgetfulness, unsteady gait, lack of mobility, and pain. Price subsequently went on medical leave and filed a claim for workers' compensation benefits with the Maryland Workers' Compensation Commission. During 1985 and 1986, medical examinations of Price indicated he had residual neurological impairments related to the head injury. Thus, the physicians at that time recommended that Price not return to a work environment with dangerous machinery and unprotected heights.

Price and Martin Marietta reached a settlement on the workers' compensation claim on January 13, 1987. The settlement agreement stated that Martin Marietta disputed the extent of Price's disability, and did not refer to any date for Price to return to work. In February 1987, Price was evaluated by a neurologist, Dr. Richard Taylor, who found Price to possess a "mild degree of unsteadiness," but also determined Price could return to regular duty as long as he avoided walking or climbing at unprotected heights. J.A. at 55. Martin Marietta subsequently prevented Price from returning to work on the basis that its medical department was unable "to clear" him. *Id.* at 83. Later in 1987 Price was re-evaluated by Dr. Taylor and was found to be able to return to work without restriction. Price was still not permitted to return to his job.

Price filed a complaint with the MCHR on February 22, 1988, alleging that the decision not to clear him for work was made on the basis of a perceived handicapped condition, and constituted discrimination. The complaint was served on Martin Marietta on March 17, 1988. Price was notified by Martin Marietta on March 22, 1988 that he was terminated, and that he had been kept on the payroll "erroneously" since January 24, 1987. Price amended his complaint on December 15, 1990 to include a charge that his dismissal by Martin Marietta was retaliatory because it occurred soon after the complaint was filed.

On June 27, 1991, the MCHR determined it had found probable cause to believe that Martin Marietta had discriminated against Price. The MCHR filed an administrative complaint on April 1, 1992 alleging that Martin Marietta had unlawfully discriminated against Price because of his handicap, in violation of Article 49B of the Annotated Code of Maryland, §§ 16(a) and 16(f) ("Article 49B"), and seeking reinstatement for Price. On September 8, 1992, Martin Mar-

---

1. The CBAs relevant to this case, dated November 12, 1984 and November 9, 1987, are between Martin Marietta and the United Automobile, Aerospace and Agricultural Implement Workers of America, and its local unions, Local Nos. 738, 766, and 788.

2. In 1981, Price was promoted to the position of "assembler-installer." J.A. at 53. Price's job was to drill holes, rivet and assemble airplane parts called "duck sidewalls." *Id.* These tasks were performed while Price stood on a fully enclosed second-floor balcony, which could be reached by elevator or stairs. *Id.*

ietta moved for dismissal of the administrative complaint on the grounds of federal preemption of these claims.

Martin Marietta filed its complaint and motion for preliminary injunction in federal court on November 19, 1992 to enjoin state administrative proceedings brought by the MCHR. Simultaneously, Martin Marietta moved the administrative law judge to stay the proceedings pending the outcome of the federal action. On December 11, 1992, the MCHR moved for dismissal of the federal action, or in the alternative, for summary judgment. On June 17, 1993, the district court granted the motion for dismissal, on the basis that abstention under *Younger* was applicable.

Martin Marietta appeals from this judgment, contending that section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a) (1988) (the "LMRA" or "§ 301"), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et seq.* (1988 & Supp. IV 1992) (the "FRA"), preempt the MCHR's jurisdiction over Price's claims, and that *Younger* abstention does not apply.

## II.

### *DISCUSSION*

A. Abstention under *Younger v. Harris*

The district court's decision to abstain under *Younger* is reviewed for an abuse of discretion. *Richmond, F. & P. R.R. v. Forst,* 4 F.3d 244, 250 (4th Cir.1993). In *Younger,* the Supreme Court articulated the strong policy against federal court interference with any pending state judicial proceeding unless extraordinary circumstances so warrant. *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982); *Younger,* 401 U.S. at 43, 45, 91 S.Ct. at 750, 751. *Younger* serves as an exception to the traditional rule that federal courts should exercise jurisdiction conferred on them by statute. *See Colorado River Water Conser-*

*vation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). In *Younger* and its progeny, the Supreme Court generally has found abstention appropriate if the following three-pronged test has been met: 1/ there are ongoing state judicial proceedings; 2/ the proceedings implicate important state interests; and 3/ there is an adequate opportunity to raise federal claims in the state proceedings. *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521.

The Supreme Court decided in *Younger* that a federal court should abstain from exercising jurisdiction and not interfere with a pending state criminal proceeding by awarding injunctive or declaratory relief. 401 U.S. at 41 & n. 2, 91 S.Ct. at 749 & n. 2. Even though *Younger* involved only criminal proceedings, abstention is fully applicable to noncriminal judicial proceedings when important state interests are involved. *Middlesex,* 457 U.S. at 432, 102 S.Ct. at 2521. In addition, state administrative proceedings, if they are judicial in nature, are within the purview of *Younger. See Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.,* 477 U.S. 619, 627, 106 S.Ct. 2718, 2722–23, 91 L.Ed.2d 512 (1986). The *Younger* doctrine was motivated by fundamental notions of comity and federalism. *Younger,* 401 U.S. at 44, 91 S.Ct. at 750–51. The doctrine also recognizes that state courts are fully competent to decide issues of federal constitutional law. *Lynch v. Snepp,* 472 F.2d 769, 774 (4th Cir.1973), *cert. denied,* 415 U.S. 983, 94 S.Ct. 1576, 39 L.Ed.2d 880 (1974).

In *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 365, 109 S.Ct. 2506, 2516–17, 105 L.Ed.2d 298 (1989) (*"NOPSI"*), the Supreme Court rejected the argument that substantial claims of preemption automatically preclude abstention. Furthermore, the *NOPSI* court did not resolve the issue of whether a "facially conclusive" claim of federal preemption always bars abstention.[3] *Id.* at 367, 109 S.Ct. at 2517–18.

---

**3.** Few courts have applied or amplified the "facially conclusive" language contained in *NOPSI. See Norfolk & W. Ry. v. Public Utils. Comm'n,* 926 F.2d 567, 573 (6th Cir.1991) (citing *NOPSI,* 491 U.S. at 367, 109 S.Ct. at 2517) (finding determination of whether FRA preempted state

administrative rule required only examination of whether FRA covered issue, not interpretation of state law or fact-finding; preemption was "facially conclusive," thus court did not abstain); *Sprint Corp. v. Evans,* 818 F.Supp. 1447, 1459 (M.D.Ala.1993) (determining that when preemp-

The district court in the instant case applied the *Younger* test, determining that the administrative proceeding brought under Article 49B qualified as an ongoing state judicial proceeding, that Maryland has an important state interest in enforcing its employment discrimination laws, and that appellant Martin Marietta would have an adequate opportunity to raise its preemption claims in this context. The district court further determined that Martin Marietta's preemption claims were neither "facially conclusive" nor "readily apparent," and thus the *Younger* abstention was found to be applicable. Martin Marietta contends that its action should have survived the *Younger* test because Price's claims are inextricably intertwined with the CBAs, and thus, that the LMRA and the FRA preempt Price's state law claims.

## B. Section 301 Preemption

■ Section 301 of the LMRA provides that:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce ... may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a) (1988). Previously, the Supreme Court has interpreted § 301 to provide federal court jurisdiction over controversies involving contract disputes, and further, to preempt state law claims arising under a CBA. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 211, 105 S.Ct. 1904, 1911, 85 L.Ed.2d 206 (1985); *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 103–04, 82 S.Ct. 571, 576–77, 7 L.Ed.2d 593 (1962); *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 451–52, 77 S.Ct. 912, 915–16, 1 L.Ed.2d 972 (1957). This principle was intended to ensure that all claims raising issues of labor contract interpretation are decided according to federal labor law, so as to guard against inconsistent interpretations under state and federal law. *Lucas Flour,* 369 U.S.

at 103, 82 S.Ct. at 576–77. According to the Court in *Allis–Chalmers,* nothing in § 301 demonstrates Congressional intent to displace completely state labor law regulation, as such a rule would permit unions and employers to exempt themselves from state labor standards that they disfavored. 471 U.S. at 211–12, 105 S.Ct. at 1911–12.

■ In *Allis–Chalmers,* the Court also recognized that "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Id.* at 211, 105 S.Ct. at 1911. Rather, preemption is to be applied only to "state-law rights and obligations that do not exist independently of private agreements, and that as a result can be waived or altered by agreement of private parties." *Id.* at 213, 105 S.Ct. at 1912. Before the Court in *Allis–Chalmers* was the issue of whether a state law claim for bad faith handling of an insurance claim was preempted because the applicable CBA included the insurance plan provisions. *Id.* at 203, 105 S.Ct. at 1907. The analysis employed in *Allis–Chalmers* focused on whether the state law cause of action

> confers nonnegotiable state-law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the ... claim is inextricably intertwined with consideration of the terms of the labor contract.

*Id.* at 213, 105 S.Ct. at 1912. The Court concluded that preemption was appropriate, because the specific right at issue was derived from the contract and the contractual obligation of good faith, thus examination of liability would require contract interpretation. *Id.* at 218–19, 105 S.Ct. at 1914–15.

The Supreme Court has since sought to clarify the type of independent state law rights that would not warrant preemption. In *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), the Court found that a unionized employee's state law suit alleging retaliatory discharge for filing a workers' compensation claim was not preempted, because the state

tion is "readily apparent" or "facially conclusive," *Younger* abstention was inapplicable). The

district court here relied upon this line of cases to abstain from hearing Price's claims.

law remedy was "independent" of the CBA, in that "resolution of the state-law claim does not require construing the collective bargaining agreement." *Id.* at 407, 108 S.Ct. at 1882 (footnote omitted). The Court also held that even if dispute resolution under a CBA and under state law would require analysis of the identical set of facts, the claim is still considered to be "independent" of the CBA, if it can be resolved without interpreting the agreement. *Id.* at 409–10, 108 S.Ct. at 1883.

Recently, the Supreme Court in *Livadas v. Bradshaw,* —— U.S. ——, —— – ——, 114 S.Ct. 2068, 2078–79, 129 L.Ed.2d 93 (1994), held that a state law claim for a penalty charge for late payment of wages owed upon discharge was not preempted by § 301, as the relevant CBA did not extinguish the claim. In *Livadas,* the California Commissioner of Labor construed a provision of state law to bar enforcement of the wage penalty claim, because the terms and conditions of Livadas' employment were governed by a CBA containing an arbitration clause. *Id.* at ——, 114 S.Ct. at 2072. The Court emphasized that in *Lingle,* § 301 was held not to be read so broadly as to preempt non-negotiable rights conferred on an employee by state law. *Id.* at ——, 114 S.Ct. at 2078. Rather, where "the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state law litigation plainly does not require the claim to be extinguished." *Id.* (citing *Lingle,* 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12). In holding against LMRA preemption of the plaintiff's claim, the Court relied upon the fact that it found no suggestion that the employee's union "purported to bargain away" the state law wage payment protections at issue. *Id.* at ——, 114 S.Ct. at 2079. The Court also focused on the fact that there was no indication that parties to the CBA understood the arbitration clause to cover such state law claims. *Id.*

It is against this background that we consider Martin Marietta's argument for preemption of each of Price's claims.

1. *Handicap discrimination claim*

Martin Marietta argues on appeal that Price has mischaracterized his claim as one based upon handicap discrimination. Instead, according to Martin Marietta, the discrimination claim squarely involves an alleged breach of the CBAs because what Price contests is the denial of reinstatement to his former position. Further, Martin Marietta argues that to establish a state law claim of handicap discrimination, Price must show he was qualified to perform the job, an inquiry it insists requires reference to the CBAs. Thus, Martin Marietta views the handicap discrimination claim as preempted by the LMRA.

The MCHR contends that Price's claims of handicap discrimination and retaliatory discharge are grounded in non-negotiable rights independent of the CBAs. The MCHR argues that the standards of Article 49B are clear and do not require reliance on CBA terms for interpretation. The MCHR contends that to view these rights as dependent upon the CBAs would lead to the conclusion that such rights could be bargained away by employers who might seek to avoid certain state labor standards, a result inconsistent with the holding in *Allis–Chalmers.*

■ Article 49B, Section 16(a)(1), provides in part:

(a) It shall be an unlawful employment practice for an employer:

(1) To fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... physical or mental handicap unrelated in nature and extent so as to reasonably preclude the performance of the employment.

Md. Ann.Code, art. 49B, § 16(a)(1) (1993). Although Article 49B does not expressly impose an obligation on employers to provide "reasonable accommodation" for employees with a physical or mental handicap, the Court of Special Appeals of Maryland has interpreted the article to contain such a requirement.[4] *Maryland Comm'n on Human Rela-*

---

4. The MCHR adopted guidelines modeled after    federal regulations of the Department of Health

*tions v. Mayor & City Council of Baltimore,* 86 Md.App. 167, 178, 586 A.2d 37, 42, *cert. denied,* 323 Md. 309, 593 A.2d 668 (1991).

The CBAs at issue contain provisions regarding employee absence from work due to a work-related injury, as well as procedures for dispute resolution. An injured employee is permitted to return to work once Martin Marietta has determined the employee is "qualified" to perform the work. The CBAs define "qualified" or "qualified to perform the work" as consisting of the "ability to perform satisfactorily the required duties of the job and to meet standards of quantity and quality without the need of further training." J.A. at 23, § 15; *id.* at 37, § 14. The arbitration provisions of the CBAs state:

> Insofar as a grievance shall involve *the interpretation or application of the provisions of this Agreement* and has not been settled satisfactorily [through grievance procedures], it *may be* submitted to an impartial arbitrator....
>
> . . . .
>
> The jurisdiction of the arbitrator and his decision shall be confined to a determination of the facts and the interpretation or application of the specific provision or provisions of this Agreement at issue. The arbitrator shall be bound by the terms and provisions of this Agreement and shall have authority to consider only grievances presenting solely an arbitrable issue under this Agreement.... The arbitrator shall have no authority to interpret any State or Federal law when the compliance or noncompliance therewith shall be involved in the consideration of the grievance....

*Id.* at 30–31; 42–43 (emphasis added). Martin Marietta conceded at oral argument that the CBAs do not contain any provisions spe-

cifically addressing complaints of discrimination or their resolution.

In reaching its determination here, the court finds instructive the analysis employed by the Sixth and Ninth Circuits. In *Smolarek v. Chrysler Corp.,* 879 F.2d 1326, 1335 (6th Cir.) *(en banc)* (8–7 decision), *cert. denied,* 493 U.S. 992, 110 S.Ct. 539, 107 L.Ed.2d 537 (1989), the Sixth Circuit reversed the district court's finding of § 301 preemption of the plaintiffs' handicap discrimination and retaliatory discharge claims. Plaintiffs in *Smolarek* alleged that their employer had violated its duties under a Michigan handicap discrimination statute.[5] *Id.* at 1327–28. The employer contended that Smolarek's claim was substantially dependent upon terms of the CBA specifically addressing reinstatement after disability. *Id.* at 1332. In rejecting the employer's preemption argument, the Sixth Circuit determined it would not imply that Smolarek had charged his employer with a CBA violation where he had not alleged one. *Id.* The Sixth Circuit determined, as the Supreme Court had similarly held in *Lingle,* that the elements of *prima facie* liability for violation of the Michigan handicap discrimination statute presented "purely factual questions" that did not require resort to a CBA for resolution. *Id.* at 1334.

Thus, the handicap discrimination claims in *Smolarek* were found not to be based on any duty that arose solely from the CBA. *Id.* at 1332–34. Furthermore, the case was not viewed as one in which the employer's *prima facie* liability would require a determination of whether the CBA was breached. *Id.* It was possible for the employer in *Smolarek* to argue in defense that its treatment of plaintiffs was motivated by a factor other than plaintiffs' handicaps and was permitted by the terms of the CBA. *Id.* at 1333–34. This

---

and Human Services implementing the FRA. *Maryland Comm'n on Human Relations v. Mayor & City Council of Baltimore,* 86 Md.App. 167, 173, 586 A.2d 37, 40, *cert. denied,* 323 Md. 309, 593 A.2d 668 (1991). The regulations defined reasonable accommodation as including, "(1) [m]aking facilities used by employees readily accessible to and usable by handicapped persons, and (2) job restructuring, part-time or modified work schedules ... and other similar actions." 45 C.F.R. § 84.12(b) (1991).

5. Plaintiff Smolarek, who suffered from a seizure disorder controlled by medication, sought to be reinstated after having a seizure at work, but was informed that no work was available suited to his medical restrictions. *Smolarek,* 879 F.2d at 1328. Plaintiff Fleming was injured at work, and after suffering various impairments that required medical restrictions on the type of work he could perform, he was assigned to jobs inconsistent with his limitations. *Id.*

alone could not support removal of the case to federal court, as the court would be required to examine only a factual question of the employer's motivation behind its actions.[6] *Id.* at 1334. The court in *Smolarek* found it would be unnecessary to decide at the outset whether the employer's interpretation of the CBA was correct as a matter of federal labor law. *Id.*

The Ninth Circuit, in *Miller v. AT & T Network Sys.*, 850 F.2d 543, 549 (9th Cir. 1988), held that the question of whether an employee can satisfactorily perform his job did not depend on the interpretation of CBA terms regarding job assignments and discharge. The employee in *Miller* was physically unable to work in conditions of high heat. *Id.* at 545. The employer assigned him to work at a location with temperatures in excess of 90 degrees, resulting in his losing consciousness at work. *Id.* The employee later refused to return to that location, but was willing to be reassigned. *Id.* After being fired, the employee brought an action under Oregon state law alleging discrimination based on a physical handicap.[7] *Id.*

The Ninth Circuit concluded in *Miller* that, unlike other cases where state law claims were preempted, this state tort action did not require comparison of the discharge provisions of the CBA with § 301, but only an analysis of expert opinions as to whether the employee was unable to do the job satisfacto-rily or that he could do so only with risk of harm to himself. *Id.* at 549. The court found that Oregon had construed the statute to articulate an independent standard to establish discrimination, and thus held that the discrimination claim was not inextricably intertwined with interpretation of the CBA terms. *Id.* at 549–50; *see also Ackerman v. Western Elec. Co.*, 860 F.2d 1514, 1517–18 (9th Cir.1988) (holding handicap discrimination claim based on California law including accommodation requirement was not preempted by federal law, as claim was not inextricably intertwined with grievance and arbitration procedures under CBA).

■ The facts here are similar to those in *Miller*, and present an even closer analogy to *Lingle* than the facts in *Smolarek*. Here, as in *Miller*, the CBAs do not mention the right to be free from handicap discrimination, nor do they refer to any right to reasonable accommodation. The CBAs, in the form submitted by the parties, do not appear to contain specific provisions referencing reinstatement after disability, similar to *Miller* and in contrast to *Smolarek*, although there are provisions defining a leave of absence and when an employee is "qualified to perform work."[8] Maryland's anti-discrimination statute, as interpreted by the Court of Special Appeals, imposes a reasonable accommodation requirement. Thus, Article 49B provides a nonnegotiable right to be free from

---

6. The *Smolarek* court noted that although no accommodation requirement existed under Michigan law, this distinction did not change the analysis of the handicap discrimination claim, as Michigan law permitted the employer to raise in state court the affirmative defense that the employee could not perform job duties in a safe manner. 879 F.2d at 1335 n. 5. Also, the Michigan law declared handicap discrimination unlawful regardless of whether the CBA contained a similar provision. *Id.*

Judge Kennedy, joined by six members of the full court, concurred in part in a separate opinion regarding non-preemption of the retaliatory discharge claim. *Id.* at 1335. Dissenting in part, Judge Kennedy stated that based on Michigan handicap discrimination law, plaintiffs' claims for reinstatement to other positions consistent with their medical restrictions were preempted because the Michigan statute and the Michigan courts did not impose a reasonable accommodation requirement. *Id.* at 1338–39. Thus, accommodation was found by the dissent to be a negotiable right under the CBA according to Michigan law, in contrast to the laws of Oregon and California. *Id.*

7. The Oregon statute at issue contained an accommodation requirement. *Miller*, 850 F.2d at 548.

8. Article VI, Section 2 of the CBAs provides that,

employees may be absent for extended periods of time as a result of disability due to sickness, accident or pregnancy. In such cases, leaves of absence shall be granted for a period not exceeding five (5) years or the employee's length of continuous service . . ., whichever is less.

J.A. at 28, 40. Further, "[l]eaves of absence shall be subject to check by the Company's Medical Department." *Id.* Employees absent because of "a compensable injury as defined by the Workmen's Compensation Act will be given a leave of absence and shall accrue length of continuous service while on compensation." *Id.* at 29, 41.

handicap discrimination and a right to reasonable accommodation, each independent of the CBAs.[9]

It seems likely that Price's handicap discrimination claim involves no real issue of interpretation of the CBAs, as in *Lingle*, *Smolarek*, and *Miller*, but simply requires a factual determination to be made on the basis of expert testimony. If the final resolution of the state law dispute tangentially involves some interpretation of a provision of the agreement, this fact alone would not require automatically that Price's claim be preempted by § 301. As the Supreme Court recognized in *Lingle*, a complete resolution of a state law claim may depend on both the meaning of a specific term in a CBA and separate analysis under state law, but in such a case, federal law would govern the interpretation of the agreement, and state law analysis would not be preempted. 486 U.S. at 413 n. 12, 108 S.Ct. at 1885 n. 12.

The result reached here is in accord with our previous holding concerning § 301 preemption. In *Jackson v. Kimel*, 992 F.2d 1318, 1326 (4th Cir.1993), this court determined that an employee's tort claim of intentional infliction of emotional distress was not subject to preemption, because reference to the CBA was unnecessary to determine the duty of care owed. This court reasoned that although the CBA may set out a standard of conduct, the supervisor's actions were unlawful under state tort law regardless of the CBA. *See id.*

Martin Marietta's reliance upon the Eighth Circuit's recent decision in *Davis v. Johnson Controls, Inc.*, 21 F.3d 866 (8th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 426, 130 L.Ed.2d 340 (1994), does not compel a contrary conclusion. In *Davis*, the employee sustained non-work-related injuries, and his request to return to work was denied although his condition had improved. *Id.* at 866–67. The employee's handicap discrimination claim was brought pursuant to a Missouri statute that also included a reasonable accommodation requirement. *Id.* at 867–68. What distinguishes *Davis* from *Smolarek* and *Miller* is that to determine whether an accommodation is reasonable, Missouri regulations provide that one factor to be considered is the authority to make such accommodation under the terms of any bona fide agreement. *Id.* at 868. The *Davis* court concluded that relocation of the employee would require examination of seniority rights of all employees under the CBA. *Id.* at 868. Thus, in *Davis* the state law claim clearly depended on the construction of terms found in a CBA. *Id.* at 868.

Regarding Martin Marietta's further contention that Price was obligated to exhaust his alternative remedies under the CBAs before pursuing a state cause of action, Martin Marietta misconstrues the result in *Childers v. Chesapeake & Potomac Tel. Co.*, 881 F.2d 1259 (4th Cir.1989). In *Childers*, an employee alleged that her improper discharge was the result of handicap discrimination, but her union refused to file a grievance on her behalf because of time limitations prescribed by the CBA. *Id.* at 1261. This court determined that the preemptive effect of § 301 depended on the elements of the purported state law claim, that is, a/ whether the claim was colorable, and b/ whether the claim was "independent" of the CBA. *Id.* at 1262. But *Childers* did not reach the issue of whether the employee's claims were in fact preempted by § 301, because it concluded the employee's causes of action were not colorable. *Id.* at 1263.

9. Martin Marietta also points to several circuits that have found preemption of handicap discrimination claims within the context of the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151–188 (1988). *See McCall v. Chesapeake & O. Ry. Co.*, 844 F.2d 294 (6th Cir.), *cert. denied,* 488 U.S. 879, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988); *O'Brien v. Consolidated Rail Corp.*, 972 F.2d 1 (1st Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 980, 122 L.Ed.2d 134 (1993). The court finds it unnecessary to reach here the issue of applicability of RLA cases to the LMRA context, to resolve the preemption question presented. The court notes that although the Supreme Court, in *Hawaiian Airlines, Inc. v. Norris*, —— U.S. ——, ——, 114 S.Ct. 2239, 2249, 129 L.Ed.2d 203 (1994), has recently adopted the *Lingle* standard in resolving claims of RLA preemption, the Court has not extended application of RLA preemption law to all LMRA cases. *See id.* at —— n. 9, 114 S.Ct. at 2249 n. 9; *see also Lorenz v. CSX Transp., Inc.*, 980 F.2d 263, 268 (4th Cir.1992), *amended,* 980 F.2d 263 (4th Cir.1993) (finding preemption under RLA more pervasive and distinguishing between types of disputes recognized under RLA and LMRA).

Martin Marietta also contends that the Supreme Court favors arbitration of discrimination claims, and that to permit Price to pursue state law remedies outside an arbitration procedure eviscerates the LMRA's goal to produce uniform results under federal labor law. Martin Marietta points chiefly to *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991). In *Gilmer*, the Supreme Court determined that discrimination claims under the ADEA can be subject to compulsory arbitration by virtue of an arbitration agreement, as nothing in the text or legislative history of the ADEA explicitly precluded arbitration. *See id.* at 26, 29, 111 S.Ct. at 1652, 1653–54. The Court was also persuaded by the fact that the ADEA permits a flexible approach to dispute resolution—a party aggrieved under the ADEA may sue privately, or the EEOC may bring an action after the agency seeks compliance by methods of conciliation. *See id.* at 29, 111 S.Ct. at 1653–54. What distinguishes *Gilmer* from the instant case is that the broad mandatory language of the arbitration clause at issue in *Gilmer*, which encompassed a New York Stock Exchange rule, provided that Gilmer must arbitrate "any dispute, claim or controversy" arising with his employer. *Id.* at 23, 111 S.Ct. at 1650. The CBA arbitration clause applicable to Price is more narrow, as it is written in permissive terms and encompasses only grievances that involve "interpretation or application" of CBA provisions.

■ In sum, we conclude that there is no preemption as Price's handicap discrimination claim is based on state law and is not inextricably intertwined with construction and application of terms of the CBAs. Thus, we need not reach the issue of whether or not a facially conclusive or readily apparent claim of preemption would bar abstention.

### 2. *Retaliatory discharge claim*

Maryland's anti-discrimination statute proscribes retaliatory discharge of an employee for filing a charge of discrimination, stating,

(f) [i]t is an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subtitle or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subtitle.

Md. Ann.Code, art. 49B, § 16(f) (1993).

Price's claim for retaliatory discharge is based upon the fact that after filing his discrimination charge, Price was notified that he had been terminated retroactive to January 24, 1987. Martin Marietta contends that Price's retaliatory discharge claim brought under § 16(f) is inextricably bound up in the terms of the CBAs, as a dispute exists about whether, according to the terms of the CBAs, Price was still employed with the company at the time he filed his claim. The MCHR argues that similar to the handicap discrimination claim, resolution of Price's retaliatory discharge claim is not bound up with interpretation of the CBAs, thus no preemption can result.

■ Price's claim of retaliatory discharge resembles the claims addressed in *Lingle* and one of the two claims asserted in *Smolarek*. To demonstrate a retaliatory discharge claim under Maryland anti-discrimination law, a plaintiff must show that, 1/ there was a statutorily protected "opposition" or "participation," 2/ an adverse employment action occurred, and 3/ there was a causal link between the protected activity and the adverse employment action. *Chappell v. Southern Md. Hosp., Inc.*, 320 Md. 483, 495–96, 578 A.2d 766, 773 (1990).

■ In finding § 301 preemption inapplicable to plaintiffs' state law claims, the *Smolarek* court focused on the point that to establish the retaliatory discharge claim at issue, the court must review purely factual questions pertinent to the conduct of the employee and the conduct and motivation of the employer, neither of which necessitates interpretation of CBA terms. 879 F.2d at 1331 (citing *Lingle*, 486 U.S. at 407, 108 S.Ct. at 1882). Thus, here, as in *Lingle* and *Smolarek*, the state law tort of retaliatory discharge creates rights independent of those provided under the CBAs.

Martin Marietta argues that in accord with the holding in *Childers*, Price was required to engage in the dispute resolution process pursuant to the CBAs, before a state law cause of action could lie. *See* 881 F.2d at

1264 (relying on Maryland law regarding resolution of wrongful discharge claims). The Maryland Court of Appeals has since taken a modified view of the exhaustion requirement in *Finch v. Holladay-Tyler Printing, Inc.*, 322 Md. 197, 206–07, 586 A.2d 1275, 1280 (1991) (finding no exhaustion of arbitration process was necessary and § 301 did not preempt wrongful discharge suit alleging layoff in retaliation for filing workers' compensation claim). The *Finch* court determined that interpretation of the CBA was irrelevant to the plaintiff's claim because it was possible for plaintiff to recover if the layoff procedures provided for in the CBA were applied as a pretext to discharge plaintiff. *Id.* at 207, 586 A.2d at 1280. Similarly, it may be that Martin Marietta followed the terms of the CBAs in terminating Price once he was no longer eligible for workers' compensation benefits, but at the same time it may have used the CBA terms as a pretext to engage in retaliatory discharge. We determine that the holding in *Finch* leads to a finding of no preemption of Price's retaliatory discharge claim.

Thus, the district court did not err in deciding against preemption, despite the presence of LMRA issues.

### C. FRA Preemption

Section 503 of the FRA, 29 U.S.C. § 793, provides that any party to a contract in excess of $10,000 with the federal government must "take affirmative action to employ and advance in employment qualified individuals with disabilities." 29 U.S.C. § 793(a) (Supp. IV 1992). Martin Marietta contends that § 503 also preempts both of Price's claims, as the FRA provides a complex scheme for resolving grievances that Martin Marietta argues precludes state law remedies. The MCHR contends that the purposes of § 503 and Article 49B are divergent, thus state handicap discrimination laws are not preempted by the FRA.

Congress intended § 503 to guide federal agencies in using their purchasing power to bring about better employment opportunities for the handicapped. *Rogers v. Frito-Lay, Inc.*, 433 F.Supp. 200, 202 (N.D.Tex.1977), *aff'd*, 611 F.2d 1074 (5th Cir.), *cert. denied sub nom. Moon v. Road-*

*way Express, Inc.*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980). The FRA provides only a limited administrative remedy for non-compliance, and neither the statute nor the relevant regulations afford a complainant an individual remedy or right to participate in proceedings. *See* 29 U.S.C. § 793(a)–(b); 41 C.F.R. §§ 60–741.26(g), –741.28 (1993). In contrast, Article 49B permits an individual to file a complaint for relief with the Commission. Pursuant to Article 49B, the MCHR possesses broad powers to issue a consensual order requiring an employer to eliminate discrimination and reinstate an employee, and to award further equitable relief. *University of Md. v. Boyd*, 93 Md.App. 303, 311, 612 A.2d 305, 309 (1992).

Additionally, the MCHR argues that legislative history suggests that the FRA was not intended to be comprehensive, nor to preempt anti-discrimination claims against federal contractors. The First Circuit considered the legislative history of the FRA in *Ellenwood v. Exxon Shipping Co.*, 984 F.2d 1270 (1st Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 2987, 125 L.Ed.2d 682 (1993), and determined it did not evidence an intent to serve as comprehensive legislation to the exclusion of all state law claims. *Id.* at 1276–77. The court dismissed the argument that the risk of conflicting judgments is much greater if state law claims are not preempted, as it was unlikely that Congress intended to immunize federal contractors from obligations under state handicap discrimination statutes. *Id.* at 1277.

Although Martin Marietta contends that the holding in *Howard v. Uniroyal, Inc.*, 719 F.2d 1552 (11th Cir.1983), dictates preemption of Price's claims, the *Ellenwood* court emphasized the narrow application of *Howard*. In *Howard*, the plaintiff attempted to enforce § 503 rights as a third-party beneficiary of an affirmative action clause contained in contracts between plaintiff's employer and the federal government. 719 F.2d at 1555. The *Howard* court reasoned that plaintiff's attempt to broaden the enforcement of § 503 rights would frustrate the purposes of the FRA, and found preemption because "Congress left no room in section 503(b) for state contract actions to supplement it." *Id.* at 1559–60, 1562. The court in

*Ellenwood* was presented with a state law claim of handicap discrimination. 984 F.2d at 1272–73. The *Ellenwood* court found the *Howard* holding inapplicable to the claim, as the plaintiff in *Howard* had attempted to use state law to supplement the federal scheme, even though Congress intended the federal administrative remedy as the sole means of enforcement of the § 503 claim. *Id.* at 1276. The plaintiff in *Ellenwood,* in contrast, sought enforcement of independent obligations created by state anti-discrimination law, rather than § 503. *Id.*

In addition to misplaced reliance on *Howard,* Martin Marietta also cites to *D'Amato v. Wisconsin Gas Co.,* 760 F.2d 1474 (7th Cir. 1985), to argue that all private suits would interfere with the aims of the FRA, and to conclude that § 503 of the FRA preempts all state law anti-discrimination claims against federal contractors. In *D'Amato,* the Seventh Circuit rejected a third-party beneficiary claim, but the issue raised was whether federal common law would furnish a remedy beyond that provided in the statute. *Id.* at 1478–79. The *D'Amato* court did not reach the issue of preemption of state law claims, other than to note that D'Amato was pursuing state administrative remedies for handicap discrimination, *id.* at 1490, and that the result in *Howard* was consistent with the court's approach. *Id.* at 1479. Martin Marietta also argues that to permit state law claims outside of the FRA might create two conflicting decisions for a single claim and threaten the uniformity of the § 503 system. This contention is unavailing, as the *Ellenwood* court made clear. 984 F.2d at 1276.

The district court did not abuse its discretion in deciding against FRA preemption.

### CONCLUSION

Martin Marietta has not demonstrated that the district court abused its discretion by abstaining from awarding injunctive relief, on the basis of *Younger.* The district court did not err in deciding to abstain from interfering with anti-discrimination proceedings under state law, despite the preemption issues raised by the LMRA and the FRA. Accordingly, we affirm.

*AFFIRMED.*