**GOLETA NATIONAL BANK, Plaintiff,**

v.

**F. Scott O'DONNELL, in his official capacity as Superintendent of Financial Institutions of the Ohio Department of Commerce, Defendant.**

No. C2–01–971.

United States District Court,
S.D. Ohio,
Eastern Division.

Dec. 18, 2002.

Kevin Robert McDermott, Schottenstein Zox & Dunn, Columbus, OH, Alan S. Kaplinsky, Arthur Makadon, Jeremy T. Rosenblum, Martin C. Bryce, Jr., Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, for Goleta National Bank.

John A. Izzo, Ohio Atty. Gen., columbus, OH, for F. Scott O'Donnell.

Rachel Kimberly Robinson, Equal Justice Foundation, Columbus, OH, Kathleen E. Keest, Iowa Atty. General's Office, Des Moines, IA, Paul Chessin, Colorado Atty. General's Office, Denver, CO, for Attorney Generals of State Consumer Credit Regulators.

Chrys D. Lemon, McIntyre Law Firm, PLLC, Washington, DC, for Community Financial Services, Ass'n.

### MEMORANDUM & ORDER

HOLSCHUH, District Judge.

Goleta National Bank ("Goleta") brought suit against F. Scott O'Donnell, Superintendent of Financial Institutions of the Ohio Department of Commerce ("O'Donnell"), seeking to enjoin him from pursuing a regulatory action against ACE Cash Express, Inc. ("ACE"), an Ohio corporation. Goleta and ACE have entered into a contract whereby ACE purportedly acts as Goleta's agent in making loans to Ohio consumers. O'Donnell is seeking to enforce the Ohio Small Loan Act ("OSLA") against ACE, but Goleta claims that the National Bank Act ("NBA") preempts his authority to do so. This matter is currently before the Court on two pending motions: (1) Plaintiff's motion for a preliminary injunction (Record at 4); and (2) Defendant's motion to dismiss (Record at 7).

## I. Background

Goleta National Bank operates two full-service branches in California. Although Goleta has no offices or employees in Ohio, it alleges that it makes short-term small loans available to Ohio consumers through ACE Cash Express, Inc., a check-cashing business. These loans, often called "payday" loans, range in amount from $100 to $500. They must be repaid within fourteen days, but may be renewed up to three times. A fee of $17 is charged for each $100 borrowed. In accordance with the Truth–in–Lending Act, it is disclosed to consumers that this 17% interest rate produces an annual percentage rate of 440%. Goleta contends that it is clearly listed as the lender on the loan documents and that it establishes the underwriting criteria and

decides whether to approve the loans. However, Goleta sells a 90% participation interest in each loan to ACE.[1] Pursuant to the Master Loan Agency Agreement, ACE bears 90% of the risk associated with each loan, keeps the loan records, receives the loan payments, and is responsible for expenses related to collection and enforcement of defaulted loans. (Ex. C to Mot. Prelim. Inj.).

On July 16, 2001, Defendant mailed to ACE a formal Notice of Intent to Issue Cease and Desist Order and Notice of Hearing. That notice charges that "[i]n economic reality, [ACE] is the lender on the transactions, not [Goleta]." (Compl.¶ 12). Defendant alleges that ACE is violating the provisions of the Ohio Small Loan Act ("OSLA"), Ohio Revised Code Chapter 1321, by charging interest on the loans in excess of that permitted by Ohio law. At ACE's request, a hearing concerning the Notice of Intent to Issue Cease and Desist Order was scheduled for October 30, 2001.

On October 9, 2001, Goleta filed the instant lawsuit against O'Donnell, asserting its rights under the National Bank Act ("NBA").[2] Goleta, which was not—and indeed could not have been—named as a party in the administrative action, contends that O'Donnell is exceeding the scope of his authority in his attempt to enforce the OSLA against ACE. Citing 12 U.S.C. § 85, 12 U.S.C. § 24(Seventh), 12 C.F.R. § 7.1004(a), 12 U.S.C. § 484, 12 C.F.R. § 7.4000, and 42 U.S.C. § 1983, Goleta asks the Court for declaratory and injunctive relief, as well as fees and costs.

The NBA provides that a national bank, like Goleta, is permitted to charge "interest at the rate allowed by the laws of the State ... where the bank is located." 12 U.S.C. § 85. Goleta is located in California, where national banks are not subject to any interest rate limitations at all. *See* Cal. Const., ch. XV, § 1. Therefore, even though Ohio may have much more restrictive usury laws, Goleta claims not to be bound by them. Goleta further argues that the fact that it uses ACE, an Ohio corporation, as its agent and sells a 90% participation interest in each loan to ACE does not subject ACE to the confines of the OSLA. Federal law authorizes national banks to make loans to consumers in other states, sell participation interests in those loans, and exercise these powers through

---

**1.** At one time, the participation interest was 95%.

**2.** This is just one of many cases filed across the United States involving challenges to a national bank's right to "rent" its charter to a check-cashing company in order to circumvent a state's usury laws. In the vast majority of these cases, consumers or state officials filed suit against ACE in state court alleging, as here, that ACE, rather than the national bank, was the true lender, and was violating the state's usury laws. ACE then removed the cases to federal court, claiming that the state law claims were preempted by the National Bank Act. Plaintiffs followed with motions to remand.

In almost all of these cases, the courts granted the motions to remand, holding that the NBA could not preempt the plaintiffs' claims against ACE because ACE was not a national bank. *See Long v. ACE Cash Express, Inc.*, No. 3:00–CV–1306–J–25TJC, unpublished (M.D. Fla. June 18, 2001)(Ex. C to Mot. to Dismiss); *Brown v. ACE Cash Express, Inc.*, No. S 01–2674, unpublished (D.Md. Nov. 14, 2001); *Colorado ex rel. Salazar v. ACE Cash Express, Inc.*, No. 01–D–1576, unpublished (D.Col. Jan. 24, 2002)(finding that under the "well-pleaded complaint" rule, federal question jurisdiction did not exist, and that ACE was collaterally estopped from alleging subject matter jurisdiction based on the holding in *Long* )(Record at 23); *North Carolina ex rel. Cooper v. ACE Cash Express, Inc.*, No. 5:02–CV–69–F(3), unpublished (E.D.N.C. May 14, 2002)(finding that nothing in the NBA precluded a state from taking action against ACE because ACE was not a national bank)(Record at 28).

agents like ACE. *See* 12 U.S.C. § 24 (Seventh); *see also* 12 C.F.R. § 7.1004(a)(authorizing national banks to employ agents for originating loans).

Only the United States Office of the Comptroller of the Currency ("OCC") has "visitorial" powers, *i.e.*, regulatory and supervisory powers, over national banks. *See* 12 U.S.C. § 484. State officials, like Mr. O'Donnell, are expressly prohibited from exercising visitorial powers over national banks. *See* 12 C.F.R. § 7.4000(a). Goleta therefore objects to Defendant's attempt to recharacterize ACE as the "true lender" so that he can assert authority over ACE and thereby indirectly enforce Ohio's usury law against Goleta. Goleta also seeks relief under 42 U.S.C. § 1983, claiming that O'Donnell, acting under color of state law, violated its rights as guaranteed by the National Bank Act.

On October 12, 2001, Goleta filed a motion for a preliminary injunction seeking to enjoin Defendant from enforcing the OSLA against ACE. The Court held an informal conference on October 23, 2001, during which the parties agreed to a briefing schedule. At that conference, Defendant also represented that, at this Court's request, the administrative hearing against ACE would be stayed pending resolution of the motion for a preliminary injunction. Thereafter, on November 23, 2001, Defendant filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7), claiming that the Court lacked subject matter jurisdiction, that Plaintiff failed to state a claim upon which relief may be granted, and that Plaintiff had failed to join ACE as an indispensable party to this case.

After the motions were fully briefed, several Attorneys General and state consumer credit regulators requested and received permission to file an amicus brief in opposition to the motion for a preliminary injunction, and in support of Defendant's motion to dismiss.[3] Goleta has filed its response to the amicus brief.[4] On February 15, 2002, Financial Services Centers of America, Inc., which represents professional check cashing companies, filed an amicus brief in support of Goleta's motion for a preliminary injunction and in opposition to Defendant's motion to dismiss.[5]

---

**3.** Amici argue, in general, that the national banks' involvement in making "payday" loans is pretextual, and that something must be done to stop the growing practice whereby national banks "rent" their charters to enable check cashing companies to circumvent a state's usury laws. They note that federal regulators, including the OCC, denounce the practice of charter renting. Amici further argue that because ACE is not a national bank, nothing in the NBA prohibits the state from regulating it.

**4.** Goleta claims there is no support for Defendant's contention that he has the authority to decide that ACE is the true lender, when the face of the loan document clearly indicates that Goleta is the true lender. Goleta again notes that existing laws authorize national banks to make loans through agents and to sell a participation interest in those loans.

**5.** This group argues that payday loans serve a useful purpose in society and are legal in the State of Ohio. In fact, Ohio authorizes payday lenders to charge $15 per $100 borrowed. This is only 2% less than what Goleta charges its customers. Amici point out that the NBA permits national banks to charge the interest rate allowed in their home state so that they do not have the overhead expenses associated with keeping track of, and complying with, all fifty states' usury laws. Furthermore, national banks are required to diversify their portfolios; selling a participation interest in their loans achieves this objective and expands the supply of credit. Finally, amici note that national banks are already heavily regulated by the OCC. Amici contend that states should not be permitted to circumvent the NBA's prohibition against state regulation of national banks by initiating regulatory actions against the agents of those national banks, and doing indirectly what they cannot do directly.

Defendant filed no response to that particular brief.

## II. Motion to Dismiss

In its motion for a preliminary injunction, Goleta argued that Defendant's attempt to apply the OSLA to the loans in question is preempted by the National Bank Act; states cannot significantly impair the rights Congress has granted to national banks. Defendant urges the Court to dismiss Goleta's complaint on several grounds: (1) this Court lacks subject matter jurisdiction because Goleta has suffered no injury-in-fact, there is no immediate controversy, and this action is not ripe for review; (2) this Court should abstain from exercising jurisdiction; (3) the National Bank Act does not pre-empt state agencies from enforcing state laws against private check-cashing companies; and (4) Goleta has failed to join ACE as an indispensable and necessary party to this action.

■ Whether Goleta has standing to bring this suit is, of course, a threshold issue. *See Warth v. Seldin,* 422 U.S. 490, 517–18, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Because the Court concludes that Goleta lacks standing, this Court lacks subject matter jurisdiction over Goleta's claims, and they must be dismissed. The Court need not address the remaining arguments raised by Defendant and does not reach Plaintiff's preemption argument raised in its motion for preliminary injunction.

### A. Applicable Law Concerning Standing and Ripeness in a Declaratory Judgment Action

■ The jurisdiction of the federal courts is limited. Article III § 2 of the United States Constitution grants the federal courts jurisdiction only over specified "cases" or "controversies." Absent a live "case or controversy," a federal court has no subject matter jurisdiction and the case must be dismissed. This "case or controversy" requirement gives rise to the concepts of standing and ripeness. *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 559–60, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The concept of standing addresses the question of *who* is a proper party to litigate a particular suit; the related concept of ripeness addresses the question of *when* a court should adjudicate a particular dispute. In the context of actions for declaratory judgment and injunctive relief, there is often considerable overlap between the concepts of standing and ripeness.

■ There are two types of standing constitutional standing and prudential standing. *See Warth,* 422 U.S. at 498, 95 S.Ct. 2197 (question of standing involves "both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise"); *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys., Inc.,* 249 F.3d 450, 456 (6th Cir.2001) ("any inquiry into a litigant's standing to sue involves examination of both constitutional limitations and prudential restrictions"). All plaintiffs must satisfy both the constitutional requirements and the prudential restrictions. *See Coyne v. American Tobacco Co.,* 183 F.3d 488, 494 (6th Cir.1999).

■ In order to establish constitutional standing, a plaintiff must demonstrate: (a) that it has suffered an "injury in fact," a harm that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical;" (b) a causal connection between the injury and the challenged conduct; and (c) that a favorable court decision is likely to redress or remedy the injury. *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130; *Steel Company v. Citizens for a Better Environment,* 523 U.S. 83, 102–103, 118 S.Ct. 1003, 140

L.Ed.2d 210 (1998). "This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Company,* 523 U.S. at 103–104, 118 S.Ct. 1003.

In addition to the constitutional requirements for standing set forth in Article III of the Constitution, the Supreme Court has also imposed a "prudential" standing requirement. In *Tennessee Protection and Advocacy, Inc. v. Board of Education of Putnam County, Tennessee,* 24 F.Supp.2d 808 (M.D.Tenn.1998), the court explained:

> Prudential limitations are "judicially self-imposed limits on the exercise of federal jurisdiction that may preclude a litigant's standing." *Family & Children's Center, Inc. v. School City of Mishawaka,* 13 F.3d 1052, 1059 (7th Cir. 1994). These limits include:
>
>> the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interest protected by the law invoked.
>
> *Id. (citing Allen v. Wright,* 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). Whereas Article III requirements are immutable and unwaivable, Congress may override prudential limitations by statute.

24 F.Supp.2d at 813.

 As noted earlier, while the issue of standing concerns who is entitled to bring suit, the issue of ripeness concerns when suit may be brought. "Ripeness separates those matters that are premature because the injury is speculative and may never occur from those that are appropriate for the court's review." *National Rifle Ass'n of America v. Magaw,* 132 F.3d 272, 280 (6th Cir.1997).[6] In the context of a declaratory judgment action, the constitutional requirements for standing and ripeness intersect. The Declaratory Judgment Act states that "[i]n a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Declaratory judgments are, by their nature, sought before an injury-in-fact occurs. *See Magaw,* 132 F.3d at 279. This creates an obvious tension. While parties are entitled to seek declaratory judgments to ward off future injury, courts are prohibited from prematurely adjudicating "disputes that are uncertain to occur or contingent in nature." 15 *Moore's Federal Practice* § 101.80[1] (Matthew Bender 3d ed.).

 In order to establish standing to bring an action for declaratory or injunctive relief, "a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review." *Magaw,* 132 F.3d at 279. As the Supreme Court noted in *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826 (1941), "[b]asically

---

**6.** In *Magaw,* the Sixth Circuit has held that a court should consider three factors in determining whether a case is ripe for adjudication: (1) hardship to the parties if the court denies judicial relief; (2) the likelihood that the harm alleged by the plaintiffs will come to pass; and (3) whether the case is fit for judicial resolution at the pre-enforcement stage. 132 F.3d at 284.

the question in each case is whether the facts alleged, under all the circumstances, show that there is substantial controversy, between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 273, 61 S.Ct. 510.

■ While the threatened injury need not be consummated before suit is filed, future injury must be almost certain to occur; a mere speculation is insufficient. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 105–06, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983)(holding that plaintiff lacked standing to seek declaratory and injunctive relief absent a showing that it was likely that he would again be stopped by police and placed in a chokehold); *Whitmore v. Arkansas,* 495 U.S. 149, 158, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (injury must be "certainly impending"); *Lujan,* 504 U.S. at 564 n. 2, 112 S.Ct. 2130 ("[w]here there is no actual harm ... its imminence ... must be established"); *Grendell v. Ohio Supreme Court,* 252 F.3d 828, 833 (6th Cir.2001) (declaratory judgment inappropriate where threat of future injury rested "on a string of actions the occurrence of which is merely speculative"). Keeping in mind these general principles concerning standing and ripeness in the context of an action seeking declaratory and injunctive relief, the Court must determine whether Goleta has presented a justiciable controversy.

## B. Summary of Parties' Arguments Concerning Standing and Ripeness

Defendant urges the Court to dismiss Goleta's complaint pursuant to Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, contending that Goleta lacks standing to litigate its claims. Defendant argues that there is no case or controversy between him and Goleta. Goleta is not a party to the state administrative action and its rights as a national bank will not be adjudicated there. The only question at issue in the administrative action is whether ACE is the true lender and is subject to the OSLA. According to Defendant, because no administrative hearing has yet been held and no decision issued, Goleta has suffered no injury, either direct or indirect. Defendant further argues that pre-enforcement judicial review is improper because the outcome of that hearing is uncertain. There is no guarantee that a case or controversy will ever exist between him and Goleta; any decision would, therefore, be merely advisory in nature. Even if ACE is found to be the true lender, ACE may request a stay and appeal that decision through the state court system.

Goleta argues that the administrative action brought against ACE threatens to impair Goleta's rights under the NBA and to make it much more difficult for Goleta to make loans to Ohio residents. A finding against ACE in the administrative action would "subject Goleta to punishing liability in further regulatory or private proceedings and/or pursuant to indemnification obligations Goleta owes to ACE." (Compl.¶ 14). Goleta claims that, even though it is not a party to the administrative action, indirect injury is sufficient to confer standing. Goleta further contends that this action is ripe for adjudication because the very fact that Defendant has initiated an administrative action against ACE, attempting to indirectly regulate Goleta's conduct, violates Goleta's right to be free from state regulation under the NBA.

Goleta further notes that "federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96 n. 14, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). In support of its ar-

gument that pre-enforcement judicial review is warranted, Goleta also cites to numerous cases in which courts have rendered declaratory judgments on the issue of whether federal law preempted state law claims. *See National Home Equity Mortgage Ass'n v. Face,* 64 F.Supp.2d 584 (E.D.Va.1999), *aff'd,* 239 F.3d 633 (4th Cir. 2001), *cert. denied,* 534 U.S. 823, 122 S.Ct. 58, 151 L.Ed.2d 26 (2001); *WFS Financial, Inc. v. Dean,* 79 F.Supp.2d 1024 (W.D.Wis.1999); *Association of Banks in Insurance, Inc. v. Duryee,* 55 F.Supp.2d 799 (S.D.Ohio 1999), *aff'd,* 270 F.3d 397 (6th Cir.2001).

## C. Discussion

While Goleta's statement of the law concerning federal jurisdiction to decide preemption issues is correct, the threshold consideration in every case is whether the plaintiff has standing to bring the action. Standing was not an issue in any of the preemption cases cited by Goleta, presumably because the plaintiffs were themselves the target of the state regulation. In this case, however, Goleta is not the target of the state regulation. As will be discussed below, this makes it more difficult to establish standing. Absent standing on Goleta's part, the Court need not address the issue of abstention or the issue of whether the NBA preempts Defendant's attempted enforcement of the OSLA.

■ The Court turns first to the constitutional requirements of standing: injury-in-fact, causation, and redressability. The first, and most important, prong of the inquiry into whether a plaintiff has standing to bring suit concerns whether the plaintiff has suffered an "actual or imminent" injury-in-fact. This requirement ensures that the plaintiff has a "personal stake in the outcome of the controversy." *Sierra Club v. Morton,* 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (*quoting Baker v. Carr,* 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)).

■ At this point in the litigation, Goleta has suffered no actual injury. Defendant has merely initiated an administrative action against ACE, alleging that ACE is violating Ohio's usury laws. ACE has requested a hearing. Defendant has agreed to continue the hearing until this Court decides the pending issues. No hearing has been held, Defendant has made no determination that ACE is the "true lender" of the payday loans, and no cease and desist order has been issued. Therefore, Goleta has not yet suffered any actual injury. It is free to continue its existing contractual relationship with ACE. However, as noted earlier, actual injury is not always required to establish standing. Goleta claims that injury is imminent. It therefore seeks a declaration that Defendant's attempted enforcement of the OSLA against ACE is preempted by the NBA. It also seeks injunctive relief in the form of an order prohibiting Defendant from enforcing the OSLA against ACE.

In the Court's view, Goleta lacks standing to litigate its claims here for several reasons: (1) the state action is predicated solely on Ohio law and has no legal effect on Goleta's rights under the NBA as a national bank; (2) Goleta unquestionably has the right to make loans in Ohio and elsewhere at California interest rates, and the Ohio proceeding cannot affect that right; (3) there is nothing in the NBA that prevents Ohio from regulating the activities of a lending institution located in Ohio and making loans to Ohio citizens if such loans are in fact made by that lending institution and not by a national bank; and (4) Goleta's concern regarding a possible adverse decision by Defendant following an evidentiary hearing is based on speculation—Defendant may find that the loans in question are in fact made by Goleta acting

through ACE as its agent, and therefore are not subject to Ohio's law regulating loans of this nature.

Defendant has initiated the administrative action against ACE, not against Goleta. ACE is the target of the proposed cease and desist order. Defendant claims that, in reality, ACE is the true lender of the loans and is violating Ohio's usury laws. ACE has requested a hearing on the matter.[7] At the hearing, each side will have the opportunity to present evidence. The Division will have the burden to show that ACE has violated the OSLA. The rights that Goleta possesses by virtue of its status as a national bank are not at issue in the administrative action and will not be adjudicated.

In a very similar case, Goleta and ACE brought suit in federal court against Hal Lingerfelt, North Carolina's commissioner of banks, and Roy Cooper, North Carolina's attorney general, seeking declaratory judgment and an order enjoining the state from enforcing North Carolina's usury laws against ACE. *See Goleta National Bank and ACE Cash Express, Inc. v. Lingerfelt,* 211 F.Supp.2d 711 (E.D.N.C. 2002). Citing many of the same statutes Goleta does in the instant action, the plaintiffs in that case sought: (1) a declaration that the NBA preempts the state claims against ACE; (2) a declaration that any state law which prohibited ACE from engaging in the contested lending activities violates Goleta's constitutional rights; and (3) an injunction preventing the state from enforcing state law against either ACE or Goleta in *North Carolina ex rel. Cooper v. ACE Cash Express,* 211 F.Supp.2d 711

(E.D.N.C.2002), an earlier action that had recently been remanded to state court.

In *Lingerfelt,* Defendants filed a motion to dismiss claiming that: (1) *Younger* abstention warranted dismissal; (2) the Anti-Injunction Act, 28 U.S.C. § 2283, prohibited federal courts from enjoining state proceedings, except in limited circumstances, none of which applied; and (3) Goleta had no standing to contest the state's enforcement action against ACE. The court found that dismissal of the action was warranted as to both ACE and Goleta.

Citing *Middlesex County Ethics Commission v. Garden State Bar Association,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the court first found that *Younger* abstention warranted dismissal of ACE's claims because there was an ongoing state proceeding involving important state interests which provided an adequate opportunity for ACE to present its federal preemption argument. *See Lingerfelt,* 211 F.Supp.2d at 715–16. The court further found that abstention was appropriate because ACE's NBA preemption claim was not facially conclusive. A sharp factual dispute existed concerning who was the true lender. The court noted that if ACE were the true lender, the NBA offers no protection because ACE is not a national bank. Even if Goleta were the true lender, the state requirements at issue concerned registration, bonding, and disclosure requirements for loan brokers and did not touch upon the NBA's sole province of regulating the interest charged by national banks. *Id.* at 718.

The court did not address the application of *Younger* abstention to Goleta's claims, noting the "somewhat difficult is-

---

**7.** According to Defendant, that hearing will be conducted by an attorney hearing officer in accordance with Ohio Revised Code Chapter 119. The hearing officer will then issue a Report & Recommendation. Pursuant to

Ohio Revised Code § 119.09, Defendant may approve, modify, or disapprove that Report & Recommendation, and will then issue a final order that can be appealed to the state courts. (Def.'s Reply Brief at 3).

sues presented by the application of *Younger* abstention to a non-party to the state action." *Id.* at 719 n. 10. However, as to Goleta's claims, the court found that Goleta lacked standing to request the relief sought, and the court therefore lacked subject matter jurisdiction over Goleta's claims. The court cited four reasons in support of its finding:

First, the state action indisputably presents claims predicated only on North Carolina law and asserted only against Ace. It alleges that Ace is either the true maker of the payday loans, which would violate the CCA and CFA, or an unregistered loan broker, which would violate the LBA. In either scenario, the issues presented in the state action do not arise under the NBA and have no legal effect on the rights of national banks. Goleta, then, simply does not have a cognizable stake in the outcome of the state action.

Second, Goleta is not a party to the state action. Accordingly, its rights to make loans to North Carolina residents and charge California interest rates will not be adjudicated, and the disposition of any issues touching upon those rights will not be binding upon Goleta in future actions. Moreover, there is no controversy surrounding Goleta's rights to make loans at California interest rates. The State agrees that such rights are fixed by the NBA and are unwavering, and has given no indication that it intends to challenge them in the near future.

Third, if the state court determines that Ace is not the true lender, but that Ace must meet the LBA's requirements, nothing will abrogate Goleta's right to

use Ace or other agents as loan brokers in the state of North Carolina. At most, Goleta's agents will have to meet the LBA's requirements. Such a result would not diminish Goleta's right to use agents in the first place; it would merely place a slight burden upon those who wish to be agents for national banks. Even if Goleta, like all national banks, is affected indirectly, that is not enough to give it standing in the instant action.

Finally, Goleta's right to sell participation interests in their loans will be left untouched by the state action. It simply is not an issue before the state court. In essence, Goleta is asking this court to step in and declare the existence of a right about which there is no true controversy. The court declines to do so.

*Id.*[8]

This Court finds the district court's reasoning in *Lingerfelt* particularly instructive. As in *Lingerfelt*, the state action in this case is brought only against ACE and is predicated only on state law. The administrative action against ACE does not implicate the NBA, and Goleta's rights under the NBA will not be adjudicated. Defendant merely seeks to determine whether ACE is the true lender on the payday loans. If it is, then it is unquestionably subject to the OSLA. However, if Goleta is found to be the true lender, then it is undisputed that Defendant has no authority to regulate Goleta's conduct; as a national bank, Goleta is not subject to the OSLA. Defendant does not question Goleta's right to make loans to Ohio residents or to charge interest rates permitted in the State of California. Goleta's right to use agents to assist in the loan-making

8. "CFA" refers to the North Carolina Consumer Finance Act, N.C. Gen.Stat. § 53–164, *et seq.;* "CCA" refers to the North Carolina Check Casher Act, N.C. Gen.Stat. § 53–275, *et*

*seq.;* "LBA" refers to the North Carolina Loan Broker Act, N.C. Gen.Stat. § 66–106, *et seq.*

process and its right to sell a participation interest in the loans may be factors that Defendant will consider in determining whether ACE is the true lender. However, the rights themselves are not at issue. Defendant cannot prohibit Goleta from using agents to make loans to Ohio consumers or from selling participation interests in those loans. If it is found, after an evidentiary hearing, that the loans in question are in fact made by Goleta through its agent ACE, the proceedings will have had no effect whatsoever on Goleta or ACE. If it is found that the loans in question are in fact made by ACE and not by Goleta, Goleta's rights to make true loans in Ohio, to use ACE as an agent, and to charge California interest rates would not be affected. Goleta simply would be prevented from covering ACE, for a fee, with the umbrella of a national bank in order to enable ACE to circumvent Ohio's usury laws.

Goleta contends that the *Lingerfelt* case is "irrelevant and unpersuasive." Plaintiff notes that the court in that case failed to address *General Motors Corporation v. Tracy*, 519 U.S. 278, 117 S.Ct. 811, 136 L.Ed.2d 761 (1997) and *Bank One v. Guttau*, 190 F.3d 844 (8th Cir.1999). This Court finds those two cases inapposite. In *General Motors*, Ohio law imposed a sales tax on all gasoline except that purchased from an Ohio regulated utility. General Motors bought gas from an out-of-state utility and filed suit challenging Ohio's tax law. The Supreme Court of Ohio held that General Motors lacked standing because it was not an out-of-state vendor. On ap-

peal, the United States Supreme Court reversed, holding that General Motors had standing because as a customer of an out-of-state vendor, General Motors "is liable for payment of the tax and as a result presumably pays more for [its] gas" because of discrimination against out-of-state vendors. 519 U.S. at 286, 117 S.Ct. 811. "Consumers who suffer this sort of injury from regulation forbidden under the Commerce Clause satisfy the standing requirements of Article III." *Id.*

Goleta also cites to the *Bank One v. Guttau* case. In that case, the bank installed automatic teller machines ("ATMs") in the Sears' stores in Iowa. When the state superintendent of banking filed a state action against Sears to prevent operation of the ATMs, the bank, at Sears' request, removed the ATMs from the stores and placed them in storage. The bank then filed suit in federal court seeking injunctive relief and a declaration that Iowa law was preempted by the NBA. The court found that Iowa law was preempted by the NBA, and that enforcement of the state law "would result in irreparable economic loss to Bank One." 190 F.3d at 850–51.

Goleta fails to realize that *General Motors* and *Bank One* are distinguishable for one important reason. In both of those cases, it was undisputed that the plaintiffs had standing because they had suffered an actual injury as defined in *Lujan.* General Motors was forced to pay higher prices for gas and Bank One had suffered an actual economic loss when Iowa forced it to remove its ATMs from the Sears stores.[9] In

---

**9.** The other case cited by Goleta suffers from the same problem. In *Hudson v. ACE Cash Express*, unpublished, 2002 WL 1205060 (S.D.Ind. May 30, 2002), a consumer filed suit against ACE and Goleta, claiming, in part, that defendants violated Indiana usury law. The consumer argued that Goleta's role in the loan process was so insignificant that ACE

must be considered the true lender. The court rejected this argument, noting that the pleadings clearly indicated that Goleta made the loan and then sold a participation interest to ACE. *Id.* at 17. The court then concluded that, because Goleta's conduct was protected by the NBA, the consumer's claims must be dismissed. However, this case is also distin-

Goleta's case, however, Goleta has not suffered any actual injury, and has failed to show that a cognizable injury is imminent.

Plaintiff further claims that the *Lingerfelt* court's conclusion that Goleta "does not have a cognizable stake in the outcome of the state action," is premised on the incorrect assumption that "Goleta's right to sell participation interests in their [sic] loans will be left untouched by the state action." Plaintiff contends that the sale of a 90% participation interest in the loans is exactly what the State of North Carolina sought to hold unlawful. This Court disagrees. The *Lingerfelt* court's conclusion that Goleta did not have a cognizable stake in the outcome of the state action was based on the fact that the state action was brought only against ACE and was predicated solely on state law. As the court noted, the issues presented in the state action did not implicate the NBA and had no legal effect on the rights of national banks.

Finally, Plaintiff attempts to distinguish the *Lingerfelt* case because it involved a judicial proceeding rather than an administrative action. Goleta claims that subjecting ACE to an administrative action violates Goleta's rights under 12 U.S.C. § 484 and 12 C.F.R. § 7.4000 to be free from the exercise of visitorial powers by agencies other than the OCC. This argument borders on being frivolous. That statute and accompanying regulation prohibit regulation by state officials regardless of the form of the enforcement action.

Nevertheless, there are additional considerations that must be taken into account when a district court is asked to conduct a pre-enforcement review of an ongoing state administrative proceeding. Normally, courts refrain from adjudicating claims challenging actions of an administrative agency until the agency has issued a final decision. In this case, the only action taken by Defendant thus far has been the issuance, to ACE, of a Notice of Intent to Issue a Cease and Desist Order. This does not constitute a final agency action.

In *CEC Energy Co., Inc. v. Public Service Commission of the Virgin Islands,* 891 F.2d 1107 (3d Cir.1989), defendant Public Service Commission issued an order stating its finding that it had authority to investigate a contract between CEC and another corporation. CEC challenged the order. The appellate court held that preenforcement review was not warranted. While the Commission had taken a position "on the legal question of its own jurisdiction," this meant only that "an investigation will commence, a prerequisite to definitive agency action." *Id.* at 1110. No final agency action had been taken and the only immediate obligation imposed on the company was to respond to the agency's inquiries.

Likewise, in the instant case, Defendant's issuance of a Notice of Intent to Issue a Cease and Desist Order to ACE does not constitute a final decision on the issue of Defendant's authority to regulate the loans in question. It merely triggers an evidentiary hearing. After reviewing the evidence submitted, a hearing officer will issue a report and recommendation concerning whether ACE or Goleta is the true lender on the loans in question. Defendant will either adopt or reject that report and recommendation. Unless Defendant determines that ACE is the true lender, he will have no authority to regulate the loans. The mere issuance of the notice has had no impact on ACE's present

guishable because the plaintiff's standing was not at issue. The consumer had suffered actual economic injury as a result of the usurious interest being charged, allowing that court to reach the merits of the claim.

ability to continue to make loans to Ohio consumers on behalf of Goleta. As is *CEC Energy*, because the notice itself does not constitute a final agency action and has no immediate legal force, pre-enforcement review is not warranted.

■■■ Considerations of federalism also come into play. As the Ninth Circuit noted in *US West Communications v. MFS Intelenet, Inc.*, 193 F.3d 1112 (9th Cir.1999):

> Federal courts must refrain from premature adjudication of agency action to avoid "entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Lab. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Principles of federalism lend this doctrine additional force when a federal court is reviewing a state agency decision at an interim state in an evolving process.

*Id.* at 1118.[10]

The Supreme Court discussed the issue of federalism in *Public Service Commission of Utah v. Wycoff Co., Inc.*, 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291 (1952). The plaintiff in that case filed suit in federal court seeking to enjoin the Public Service Commission of Utah from future regulation of the transportation of motion picture film and newsreels, alleging that such regulation would interfere with interstate commerce. The Court found that the action was not ripe for adjudication. The Court noted that the plaintiff was attempting to insulate itself from future regulation and "rushed into federal court to get a declaration ... intended ... to tie the Commission's hands before it can act." *Id.* at 247, 73 S.Ct. 236. The Court further noted:

> Declaratory proceedings in the federal courts against state officials must be decided with regard for the implications of our federal system. State administrative bodies have the initial right to reduce the general policies of state regulatory statutes into concrete orders and the primary right to take evidence and make findings of fact. It is the state courts which have the first and the last word as to the meaning of state statutes and whether a particular order is within the legislative terms of reference so as to make it the action of the State. We have disapproved anticipatory declarations as to state regulatory statutes, even where the case originated in and was entertained by courts of the State affected. Anticipatory judgment by a federal court to frustrate action by a state agency is even less tolerable to our federalism. Is the declaration contemplated here to be res judicata, so that the Commission can not hear evidence and decide any matter for itself? If so, the federal court has virtually lifted the case out of the State Commission before it could be heard. If not, the federal judgment serves no useful purpose as a final determination of rights.

> The procedures of review usually afford ample protection to a carrier whose federal rights are actually invaded, and there are remedies for threatened irreparable injuries. State courts are bound equally with the federal courts by the Federal Constitution and laws. Ultimate recourse may be had to this Court by

---

**10.** *See also* 13A Charels A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3532.4 (2d ed.1984)("[w]hen contingency on the defendant's side involves the uncertain course of future governmental action, much of the ripeness concern is apt to focus on the appropriate relationship between courts and administrative agencies.").

certiorari if a state court has allegedly denied a federal right.

*Id.* (internal citations omitted).

As in *Wycoff,* Goleta is asking a federal court to tie the hands of a state agency before the agency is given a chance to act. In the Court's view, the state agency must be given the opportunity to make the initial determination concerning whether ACE is subject to the OSLA as the true lender on the payday loans. ACE will have ample opportunity to challenge Defendant's authority to make that determination, both in the administrative hearing itself, and also on appeal.

Of course, the case at hand is distinguishable from *Wycoff* in that Goleta is seeking to enjoin a state administrative agency from enforcing a state statute not against itself, but against a third party. As noted earlier, Goleta's rights are not being adjudicated in the administrative action. Therefore, any injury it could potentially suffer would not be the direct result of any infringement on Goleta's rights as a national bank; rather, it would be, at most, the indirect result of a finding that ACE, not Goleta, is in fact the true lender and is therefore subject to the OSLA.[11]

▇▇ Goleta correctly notes that even an indirect injury may, in some cases, be sufficient to confer standing. Nevertheless, plaintiffs claiming to have been injured as a result of a governmental entity's regulation of a third party have an increased burden. As the Supreme Court noted in *Warth:*

> When a governmental prohibition or restriction imposed on one party causes specific harm to a third party, harm that a constitutional provision or statute was

intended to prevent, the indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights. But it may make it substantially more difficult to meet the minimum requirement of Art. III: to establish that, in fact, the asserted injury was the consequence of the defendants' actions, or that prospective relief will remove the harm.

422 U.S. at 505 (internal citations omitted).

The Supreme Court addressed this same issue many years later in *Lujan:*

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of *someone else,* much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction— and perhaps on the response of others as well. The existence of one or more of the essential elements of standing "depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot pre-

---

**11.** In that event, Goleta admits that it could open a branch office in Ohio so that it could make loans to Ohio consumers without ACE's assistance, and it is equally clear that Goleta could simply restructure its arrangement with ACE so that Goleta becomes the true lender and not ACE.

sume either to control or to predict," and it becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury. Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily "substantially more difficult" to establish.

*Lujan*, 504 U.S. at 561–62, 112 S.Ct. 2130 (internal citations omitted).

In the Court's view, Goleta has failed to overcome these hurdles. As noted earlier, ACE is the target of Defendant's administrative action. Goleta claims that unless the Court enjoins Defendant from enforcing the OSLA against ACE, Goleta will suffer imminent injury. The Court is not convinced. Two important variables come into play: (1) it is not clear how ACE intends to respond to Defendant's attempts to enforce the OSLA; and (2) the outcome of the administrative action against ACE, and any subsequent appeals, is uncertain.

Goleta has not joined ACE as a party in this action and ACE's views on the propriety of Defendant's attempts to enforce the OSLA are not before this Court. It is very probable that, at the hearing that ACE has requested, ACE will argue in its defense that Goleta National Bank is the "true lender." It may assert the same arguments Goleta asserts here and may convince the hearing officer that because Goleta is the true lender, the loans are not subject to state regulation. As noted earlier, the Division will have the burden of proving that ACE violated the OSLA. If the hearing officer determines that the State of Ohio has no authority to regulate ACE's conduct because Goleta is the true lender, Goleta will be free to continue its contractual relationship with ACE and will suffer no injury. If the hearing officer determines that ACE is the true lender and is violating Ohio's usury laws, this admittedly will require Goleta, if it desires to make loans in Ohio, to become the true lender in order to exercise its right as a national bank to charge the interest rates permitted by California. Furthermore, even if the hearing officer finds that ACE is the true lender, and Defendant approves the Report & Recommendation, ACE may appeal the decision through the state court system which may or may not affirm Defendant's order.

■■■ Although Goleta would like this Court to believe that Defendant has already made up his mind that ACE is the true lender, this Court is not prepared to make any predictions about the outcome of the administrative action. ACE is free to present Goleta's arguments in that forum. This Court must presume that the hearing officer will carefully consider those arguments, as well as the applicable federal and state statutes and constitutional provisions before making any determination about who the true lender is. *See Wycoff,* 344 U.S. at 247, 73 S.Ct. 236 ("State courts are bound equally with the federal courts by the Federal Constitution and laws.").

In the Court's view, the possibility of future injury to Goleta is purely speculative, hinging on ACE's response to the action brought by Defendant, on the outcome of the requested hearing, and on possible state court appeals. This type of speculative injury does not constitute the requisite "substantial controversy, between parties having adverse legal interests of sufficient immediacy and reality" that would "warrant the issuance of a declaratory judgment." *Maryland Casualty Co.,* 312 U.S. at 273, 61 S.Ct. 510. Goleta has simply failed to establish the "significant possibility of future harm" necessary to

warrant pre-enforcement review: *See Magaw,* 132 F.3d at 279.

In summary, for the reasons stated above, the Court finds that Goleta lacks standing to litigate its claims in this forum. Goleta has not shown that it has suffered any injury in fact, one that is "concrete and particularized," and "actual or imminent, not conjectural or hypothetical." *Lujan,* 504 U.S. at 560–61, 112 S.Ct. 2130. Since Goleta has failed to meet the constitutional requirements for standing, the Court need not consider the prudential requirements. Since Goleta lacks standing, this Court lacks subject matter jurisdiction, and Goleta's claims must be dismissed.

## IV. Conclusion

For the reasons discussed above, the Court finds that Goleta National Bank lacks standing to bring this action against Defendant. Therefore, Defendant's motion to dismiss is **GRANTED** (Record at 7).

**IT IS SO ORDERED.**