FIFTH DIVISION

November 10, 2005

No. 1-04-2132

DOUGLAS D. DANNEWITZ and ) Appeal from the

ELLYN K. DANNEWITZ, ) Circuit Court of

) Cook County

Plaintiffs-Appellants, )

)

v. ) No. 01 L 008188

)

EQUICREDIT CORPORATION OF )

AMERICA, and JOHN DOES 1-10, ) Honorable

) Allen S. Goldberg,

Defendants-Appellees. ) Judge Presiding.

JUSTICE O'BRIEN delivered the opinion of the court:

Plaintiffs, Douglas and Ellyn Dannewitz, appeal a judgment of the circuit court denying plaintiffs' motion for partial summary judgment and granting defendant EquiCredit Corporation of America's  motion for summary judgment.  On appeal, plaintiffs contend: (1) the circuit court erred in granting the defendant's motion for summary judgment and finding that plaintiffs' claims under the Illinois Interest Act (815 ILCS 205/4 
et
 
seq
. (West 2002)) and the Illinois Consumer Fraud and Deceptive Business Practices Act (Illinois Consumer Fraud Act) (815 ILCS 505/1 
et
 
seq
. (West 2002)) were preempted by the National Bank Act (12 U.S.C. §§ 85, 86 (2000)) ; and (2) the circuit court erred in denying the plaintiffs' motion for partial summary judgment.  We affirm.

The pleadings allege that on November 18, 2000, plaintiffs obtained a mortgage loan from HomeGold, Inc., a loan corporation then organized and existing under the laws of South Carolina.  The mortgage included a choice of law provision stating that the loan was to be "governed by federal law and the law of the jurisdiction in which the property is located."  The note also included  a prepayment penalty providing that if plaintiffs made full prepayments within "60 months of the date of [their] loan, [they] agree to pay the note holder a prepayment fee."

A former assistant general counsel for EquiCredit attested in an affidavit that the defendant later purchased plaintiffs' loan from HomeGold.  He further attested that the defendant is a Delaware corporation, headquartered in Florida, doing business in Illinois.  Defendant is a wholly owned subsidiary of Bank of America.

Douglas Dannewitz testified in a deposition that in June, 2001 he and his wife were selling their home to be closer to his terminally ill father.  They received a payoff letter from defendant outlining the prepayment penalty of $9,354.32.   He requested that the prepayment penalty not be assessed against him; his request was refused, and he was forced to pay the penalty in order to prevent defaulting on the sale of his home.  Dannewitz testified that until he requested the payoff letter, both he and his wife were unaware of the prepayment penalty. Dannewitz was forced to borrow $9,500 from his dying father to purchase a new home closer to his parents.  He was still repaying the loan to his father’s estate at 6% interest rate at the time of the deposition.

Plaintiffs filed a two-count complaint against defendant alleging violations of the Illinois Interest Act (815 ILCS 205/4 
et
 
seq
. (West 2002)) and the Illinois Consumer Fraud Act (815 ILCS 505/1 
et
 
seq
. (West 2002)) based on the inclusion of an allegedly unlawful prepayment penalty in plaintiffs' residential mortgage loan.  Plaintiffs moved for a partial summary judgment on the issue of whether defendant's actions constituted a violation of the Illinois Interest Act.  The circuit court denied the plaintiffs' motion for partial summary judgment.  Defendant filed a motion for summary judgment on the basis that the National Bank Act preempts plaintiffs' claims under the Illinois Interest Act and the Illinois Consumer Fraud Act.  The circuit court granted defendant's motion for summary judgment.  Plaintiffs filed this timely appeal.

A motion for summary judgment is properly granted if the pleadings, depositions and admissions on file, together with affidavits or exhibits demonstrate there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  
Abrams v. City o f Chicago
, 211 Ill. 2d 251, 257 (2004)
.  The proper standard of review for an order granting summary judgment is 
de novo
.  
Abrams
, 211 Ill. 2d. at 258.

Plaintiffs contend that the circuit court erred by granting defendant's motion for summary judgment and finding that federal law preempts the plaintiffs' claims against defendant under the Illinois Interest Act and the Illinois Consumer Fraud Act. The preemption doctrine, rooted in the supremacy clause of the United States Constitution, requires courts to examine whether it was Congress’ intent for federal law to preempt state law in any given case.  
Fidelity Federal Savings & Loan Ass'n v. de la Cuesta
, 458 U.S. 141, 73 L. Ed. 2d 664, 102 S. Ct. 3014 (1982). 
 
There are three ways in which federal laws and statutes can preempt state law: (1) when the language of the federal statute expressly preempts state law; (2) when the scope of the statute indicates Congress intended federal law to occupy the field exclusively; or (3) when state law is in actual conflict with federal law.  
Sprietsma v. Mercury Marine
, 537 U.S. 51, 154 L. Ed. 2d 466, 123 S. Ct. 518 (2002).

In the National Bank Act, Congress gave national banks and their subsidiaries the power to "take, receive, reserve, and charge on any loan or discount made ***  interest at the rate allowed by the laws of the State, Territory, or District where the bank is located."  12 U.S.C. § 85 (2000).  Congress also provided that the "taking, receiving, reserving, or charging a rate of interest greater than is allowed by section 85 of this title, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill, or other evidence of debt carries with it, or which has been agreed to be paid thereon".  12 U.S.C. § 86 (2000).  The United States Supreme Court has held that the National Bank Act completely defines what constitutes the taking of usury by a national bank, referring to the state law only to determine the maximum permitted rate. 
Beneficial National Bank v. Anderson,
 539 U.S. 1, 156 L. Ed. 2d 1, 123 S. Ct. 2058 (2003).  The Supreme Court has further held that  sections 85 and 86 of the National Bank Act "supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive ." 
Beneficial
, 539 U.S. at 11, 156 L. Ed. 2d at 10, 123 S. Ct. at 2064.

Here, defendant is a subsidiary of a national bank, to which the National Bank Act applies. Plaintiffs, however, contend that where loans are made by a non-national bank and subsequently purchased by a national bank, the National Bank Act does not apply.  Plaintiffs cite to 
Flowers v. EZPawn Oklahoma, Inc
, 307 F. Supp. 2d 1191 (N.D. OK. 2004), as support.  
Flowers
 
is inapposite.  Flowers' claims were based upon a nonbank's violation of a state law, there were no claims made against a national bank, and no support that the county bank named was the actual lender.  
Flowers
, 307 F. Supp. 2d at 1205-1206.

Plaintiffs also cite 
Goleta National Bank v. O'Donnell
, 239 F.Supp. 2d 745 (S.D. Ohio 2002), in support for their claim.  
Goleta
 is also unpersuasive.  Goleta National Bank
 brought suit seeking to restrain the superintendent of financial institutions of the Ohio Department of Commerce from enforcing the Ohio Small Loan Act (Ohio Revised Code Chapter 1321), against ACE Cash Express, Inc. (ACE), a company Goleta contended was acting as its agent in making loans to Ohio consumers.  Goleta contended that the National Bank Act preempted the superintendent's authority to enforce the Ohio Small Loan Act against ACE.  The court found that Goleta lacked standing to bring its claim because the underlying state claims were being made against ACE and not the national bank itself.  The court found there "is nothing in the [National Bank Act] that prevents Ohio from regulating the activities of a lending institution located in Ohio and making loans to Ohio citizens if such loans are in fact made by that lending institution and not by a national bank."  
Goleta
, 239 F. Supp. 2d at 753.

Here plaintiffs make state claims against a subsidiary of a national bank, which is distinguishable from the cases cited by the plaintiffs.

Plaintiffs further rely on the Office of the Comptroller of the Currency's (OCC) Interpretive Letter #1016, of February 2005.  In the February 2005 letter, acting chief counsel Daniel P. Stipano responded to a request for clarification in the cases of 
Wells Fargo Bank v. Harris
, Docket No. ESX-L-467-02 and 
Bank One National Association v. Feinstein
, Docket No. F-11450-00.  In 
Wells Fargo
, Delta Funding made a mortgage loan to Alberta Harris and later assigned the mortgage to Wells Fargo as "Trustee for Delta Funding Home Equity Loan Trust 2000-1."  As trustee acting on behalf of the investors in Home Equity Loan Trust 2000-1, Wells Fargo filed suit against Ms. Harris alleging that she had defaulted on the loan made by Delta.  In 
Bank One
, Delta Funding made a mortgage loan to Dequilla Robinson and later assigned the mortgage to Bank One National Association as "Trustee in Trust for the Registered Holders of Delta Funding Home Equity Loan Asset-Backed Certificates Series 1999-3."  As trustee acting on behalf of the investors in Delta Asset-Backed Certificates Series 1999-3, Bank One filed suit against Jack Feinstein, the administrator of Ms. Robinson's estate, seeking to foreclose on the real estate she had pledged as collateral for the loan made by Delta.

In 
Wells Fargo
 and in 
Bank One
, Ms. Harris and Mr. Feinstein alleged defenses based on the New Jersey Consumer Fraud Act (New Jersey Act) (N.J. Stat. Ann. § 56:8-1 (West 2001)).  Wells Fargo and Bank One (the Banks) asserted that federal law authorizing national banks to make and purchase real estate loans (12 U.S.C. §371 (2000); 12 C.F.R. §34.4 (a) (10) (2005)) preempted the state law defenses under the New Jersey Act.  The OCC found no federal preemption.  The OCC stated:

"[I]n no sense, under the facts presented, can the Banks be viewed as making a real estate loan under 12 U.S.C. §371 and 12 C.F.R. §34.4.  The Banks did not originate the loans.  They did not fund the loans at inception.  Nor did they 'purchase' the loans as part of any real estate lending program comprehended by the regulation.  ***  [T]he Banks act as trustees for the benefit of investors in the trusts.  The substance of the transaction is that the investors, not the Banks, are purchasing the loans that have been made by Delta.  The investors own the beneficial interest in the loans held by the Banks as trustees.  And the effect of any liability for violation of the [New Jersey Act] ultimately falls on the investors.  Nowhere do the Banks allege that they themselves, as opposed to the trusts they represent, are exposed to liability for any violation of the [New Jersey Act].  For all these reasons, 12 U.S.C. §371 and 12 C.F.R. §34.4(a) simply do not apply to the transactions by which the Banks acquired legal title to the loans***."  Office of the Comptroller of the Currency,   Interpretive Letter #1016 (February 2005).

Unlike the situation described in Interpretive Letter #1016 in which the national banks were trustees and the beneficial interest was owned by investors, the defendant in the present case purchased and held the loan directly, acting on its own behalf and not as a trustee for a third party.   Because this loan differs from the cases and situation presented to the OCC, the interpretation of the OCC letter of February 2005 is inapplicable here.  Thus, the National Bank Act is dispositive.

The circuit court relied upon 
Beneficial
 
in making its decision to grant the defendants' motion for summary judgment.  We agree.  In 
Beneficial
, the Supreme Court held that because section 85 and section 86 of the National Bank Act "provide the exclusive cause of action for [usury] claims, there is,  in short, no such thing as a state-law claim of usury against a national bank."  
Beneficial
, 539 U.S. at 11 156 L. Ed. 2d at 10, 123 S. Ct. at 2064.   Thus, the circuit court did not err in determining that the National Bank Act preempted the Illinois Interest Act and the Illinois Consumer Fraud Act, and the circuit court's grant of summary judgment was not error.

Because defendant's motion for summary judgment is affirmed, we need not address the circuit court's denial of the plaintiffs' motion for partial summary judgment.

For the foregoing reasons we affirm the circuit court.

Affirmed.

GALLAGHER, P.J., and O'MARA FROSSARD, J., concur.